KAVAL CONSTRUCTION CORP. et al., Petitioners, *v.* STATE DIVISION OF HUMAN RIGHTS, on Complaint of GEORGE MINNIEFIELD, Respondent.

Second Department, July 5, 1972.

*King & Smith* (*Melvin Smith* of counsel), for petitioners.

*Henry Spitz* (*Joan Offner* of counsel), for State Division of Human Rights, respondent.

HOPKINS, Acting P. J.   The petitioner Kaval Construction Corporation (Kaval) is engaged in the building and sale of homes near Peekskill, New York.   The petitioner Katzowitz is the president and principal stockholder of Kaval.   The complainant, George Minniefield, was interested in purchasing land owned by a corporation controlled by the petitioners and contracting with Kaval to construct a home on the land.   Minniefield filed a complaint with the State Division of Human Rights that the petitioners had committed an unlawful discriminatory act by refusing to construct a house for him because he was a black man (Executive Law, §§ 296, 297).   The Division after a hearing determined that there was substantial evidence to establish the truth of the complaint and in its order (second decretal paragraph, subd. [a]) awarded damages to Minniefield in the sum of $5,425.   On appeal by the petitioners to the State Human Rights Appeal Board (Executive Law, § 297-a), the board affirmed.

The petitioners claim that the finding of discrimination is not supported by substantial evidence and that, even if it is, the damages assessed against them are excessive and too remote. Their first contention may be briefly rejected.   In our view, the evidence at the hearing sufficiently sustains the determination of an unlawful discriminatory practice.   The Division has broad authority to weigh and assess the conduct of the petitioners in their dealings with the complainant, to construe their words in the light of their deeds and to reach a conclusion as to

their motives and attitudes, based on fair inferences from the facts (cf. *Matter of Holland* v. *Edwards,* 307 N. Y. 38, 45; *Matter of Moskal* v. *State of New York, Executive Dept., Div. of Human Rights,* 36 A D 2d 46, 49). That authority was not abused by the decision against the petitioners on this record.

The petitioners' contention as to damages is more fundamental and strikes at the power of the Division and the Appeal Board to award damages to a complainant payable by the party guilty of unlawful discrimination. The sum of $5,425 as damages owing to Minnifield was held by the State agency to represent the loss of bargain or profit suffered by him as the result of the petitioners' actions. In August, 1967, when he was negotiating for the contract with the petitioners looking toward the construction and sale of the house, the price was $24,500. Expert testimony at the hearing established that in May, 1969 the fair market value of the property was $29,925. Thus the damages awarded were the difference between the price of the contract and the value nearly two years later, or $5,425.

It is manifest that the date on which the fair market value of the property is fixed has a direct relation to the amount of damage. The date chosen by the Division and the Appeal Board was the occasion when Minniefield, as he testified, found other housing and ceased to be interested in acquiring a house.[1] We do not think that the proper measure of damages was thus adopted by the State agencies.

The Division is empowered, upon a finding of a discriminatory practice, to award to the person aggrieved "compensatory damages * * * as, in the judgment of the division, will effectuate the purposes" of article 15 [the Human Rights Law] of the Executive Law (Executive Law, § 297, subd. 4, par. c, cl. [ii]). The nature of the compensatory damages of which the statute speaks is determined in the light of precedent and common-law principles (*State Comm. for Human Rights* v. *Speer,* 29 N Y 2d 555, revg. 35 A D 2d 107 on dissenting opn. [pp. 112–113]).

If the complainant had sued the petitioners at common law on the theory of a breach of contract, the damages recoverable by him would have been the difference between the contract price and the market value of the property at the time of the breach in August, 1967[2] (*Bulkley* v. *Rouken Glen, Inc.,* 222 App. Div.

---

1. Minniefield testified that in May, 1969 he had purchased a six and one-half room co-operative apartment in New York City for $3,030.

2. The evidence at the hearing indicated that the petitioners had taken a binder for the sale of the property from another party on August 12, 1967.

570, affd. 248 N. Y. 647; *Mokar Props. Corp.* v. *Hall,* 6 A D .2d
536, 539). If an action sounding in tort, based perhaps on the
theory of an illegal interference with a contract, had been
brought by the complainant against the petitioners, the measure
of damages would be substantially the same (11 Encyclopedia
New York Law, Damages, § 1213). " The rule of damages in
civil actions, in contract or tort, except in cases where punitory
damages are awarded, is a just indemnity for the wrong which
has been done, and no more, and the true test by which this is
to be determined is the amount of injury which the plaintiff
has sustained " (*Thayer* v. *Manley,* 73 N. Y. 305, 307–308; see,
also, *United States Trust Co. of N. Y.* v. *O'Brien,* 143 N. Y.
284, 287–288).

As a wrong created by statute, a discriminatory act should
not be so inflexibly construed as to destroy the deterrent effect
which the award of damages in part was obviously calculated
to achieve (cf. *Italiano* v. *New York State Executive Dept., Div.
of Human Rights,* 36 A D 2d 1009). Even in the more conven-
tional field of contracts, absolute certainty in the amount of
damages is not essential, particularly when the wrongdoer has
caused the difficulty in the proof (*Spitz* v. *Lesser,* 302 N. Y. 490,
494). So, too, in actions brought to enforce civil liability arising
from violations of trade regulations, the wrongdoer bears the
risk of uncertainty in measuring the harm suffered by the suing
party (cf. *American Electronics* v. *Neptune Meter Co.,* 33 A D
2d 157; *Alexander's Dept. Stores* v. *Ohrbach's, Inc.,* 269 App.
Div. 321). However, the policy underlying that approach is
simply another adaptation of the familiar principle that one
may not profit by his own wrong (e.g., *Bigelow* v. *RKO Radio
Pictures,* 327 U. S. 251, 265; *Story Parchment Co.* v. *Paterson
Parchment Paper Co.,* 282 U. S. 555, 563–566).

In most instances, a victim of unlawful discrimination in the
making of a contract for the purchase or rental of real property
will be fairly compensated if he receives as damages such
amount as will put him in as good a position as he would have
been in if the contract had been performed[3] (see, generally,
Fuller and Perdue, The Reliance Interest in Contract Damages,
46 Yale L. J. 52). The date of the discriminatory act or a
reasonable period thereafter would then fix the time at which
the determination of damages should be made.

---

3. It is, of course, recognized that in proper cases, where the proof is estab-
lished, additional damages for mental anguish might be recovered (*State Comm.
for Human Rights* v. *Speer,* 29 N Y 2d 555, revg. 35 A D 2d 107 on the dissenting
opn. [pp. 112–113], *supra*).

In the present case, nevertheless, the Division made its determination not based on that rule but based on the interest and inclination of the complainant in buying a house — an interest and inclination which apparently flagged nearly two years after the occurrence of discrimination. But the interest of a complainant is naturally subjective and to install such a rule of damage in effect imposes a penalty not countenanced by the statute, rather than to compensate the complainant.

The leisurely pace of these proceedings may partially account for the erroneous theory of damage. Neither in his initial complaint filed August 21, 1967 nor in his amended complaint filed in July, 1968 did Minniefield assert a claim for damages. At the hearing in January, 1969 it was noted for the record that no claim for damages had been made or proved. About a year later the case was reopened to hear evidence of damage and Minniefield testified at the hearing in April, 1970 that he was no longer interested in purchasing a house, since he had purchased a co-operative apartment in May, 1969. It was at this hearing that proof of damage in the sum of $5,425 was advanced on behalf of the complainant.

Even if the delay contributed to the proof sanctioned by the Division, that, of course, provides no rational ground for the damages allowed. In summary, it is our opinion that the complainant is entitled to pecuniary damages in the order of common-law proof (cf. *Manko* v. *City of Buffalo,* 271 App. Div. 286, affd. 296 N. Y. 905; *Dunkel* v. *McDonald,* 272 App. Div. 267, affd. 298 N. Y. 586). Accordingly, the matter should be remanded to the Division with a direction to determine Minniefield's damages consistent herewith.

We add one further modification. Subdivisions (c) and (d) of the second decretal paragraph of the order of the Division under review require the petitioners to notify the Urban League of Westchester, Inc., as the designee of the State Division, of available housing accommodations of the petitioners for a period of two years. We think these paragraphs should be amended to eliminate any reference to the designee. As we view the purpose of the Human Rights Law, it is unfair to permit a certain private organization, to the exclusion of others, to be favored by the receipt of notices of available housing (cf. *Center Mgt. Co.* v. *State Division of Human Rights,* 34 A D 2d 637, affd. 27 N Y 2d 914; *Scorcia* v. *State Division of Human Rights,* 27 N Y 2d 912; *Malcolm Cornell, Inc.* v. *State Division of Human Rights,* 35 A D 2d 730). Notice to the State Division alone should be sufficient. Distribution of that information to inter-

ested parties is a matter of internal management within the Division. For this reason, paragraph (d) is unnecessary and paragraph (c) should be modified to eliminate the reference to the named designee of the State Division.

The cross application of the State Division for enforcement of its and the Appeal Board's orders, under the circumstances, should be dismissed, without prejudice to renewal, if that should prove advisable, after the determination of damages upon the remand to the State Division.

Costs should not be awarded to any of the parties.

SHAPIRO, CHRIST, BRENNAN and BENJAMIN, JJ., concur.

Application of petitioners granted to the extent that the order of the State Human Rights Appeal Board is modified, on the law, by striking therefrom the words "in all respects" and adding thereto, immediately after the provision that the order of the Division is affirmed, the following: "except that the following are stricken from the second decretal paragraph of the order of the State Division of Human Rights: subdivisions (a) and (d) and the passage ' and its designee the Urban League of Westchester, Inc., 2 Grand Street, White Plains, New York ' in subdivision (c). As so modified, the order of the Appeal Board is affirmed, without costs, and the matter is remanded to the State Division of Human Rights for a new hearing upon the issue of damages and a new determination thereon.

Cross application dismissed, without costs and without prejudice to renewal, if that should prove advisable, after determination of damages upon the remand to the State Division of Human Rights.