166 N.J. Super. 95 (1979)
398 A.2d 1345
DIRECTOR, DIVISION ON CIVIL RIGHTS, BARRY JOHNSON, MARGARET JOHNSON, ROBERT GUY, CINDY LOUISE GUY, COMPLAINANTS-RESPONDENTS,
v.
SLUMBER, INC. T/A HOLIDAY INN OF FORT LEE, WILLIAM J. MITCHELL, JR., LILLIAN CHAIN, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 4, 1978.
Decided February 14, 1979.
*98 Before Judges CONFORD, PRESSLER and KING.
Messrs. Jesuelle & Maurice, attorneys for the appellants (Mr. Sal J. Jesuelle on the brief).
Mr. John J. Degnan, Attorney General of New Jersey, attorney for the respondent Division on Civil Rights (Ms. Erminie L. Conley, Deputy Attorney General, of counsel; Mr. Joseph M. Gorrell, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
This is an appeal from an order entered by the Director of the Division on Civil Rights (Division) finding the respondents to have been guilty of acts of proscribed discrimination and directing specific relief against them.
The corporate respondent is the owner and operator, under franchise, of a Holiday Inn Hotel located on Route 4 in Fort Lee, New Jersey. Respondent William J. Mitchell is its general manager and respondent Lillian Chain is its front desk supervisor. The gravamen of the complaint against them is that they practiced, in violation of N.J.S.A. 10:5-4 and 10:5-12(f), the discriminatory policy of generally assigning all black patrons to second-floor rooms, *99 withholding from them, on the basis of race only, room accommodations on the other three floors of the hotel. That this conduct, if proved, would constitute a violation of N.J.S.A. 10:5-12(f) is self-evident.[1] The hearing examiner, whose recommended findings of fact and conclusions of law were accepted by the Director, made detailed findings supporting his conclusion that this basic allegation was proved. We are satisfied that those findings were adequately supported by sufficient credible evidence in the record as a whole and hence not subject to appellate interference. See, e.g., Jackson v. Concord Company, 54 N.J. 113, 117 (1969). We, therefore, reject respondents' contention on this appeal that the decision was against the weight of the evidence.
Respondents' remaining grounds of appeal are addressed both to procedural and remedial issues whose resolution requires a brief statement of factual background.
The discriminatory policy of consigning blacks to second-floor rooms came to the attention of the Division in February 1976 when one Paul Thurber, a desk clerk employed by respondent, filed with it an affidavit describing respondents' practices in this regard. The Director of the Division filed a complaint in his own name[2] against the corporate respondent in April 1976, charging both the act of discrimination and requesting "whatever relief is provided for by law, including but not limited to a remedy for the discrimination aforementioned." A finding of probable *100 cause was made by the Director in May 1976 following further investigation by him which included "testing" by four Division field representatives. Respondents' answer was duly filed denying all material allegations and conciliation proceedings ensued as required by N.J.S.A. 10:5-14. Not satisfied with the remedial scope of respondents' offered "consent order," the Director, on July 1, 1976, advised respondents in writing that conciliation had failed and that the matter would proceed to public hearing.
The public hearing was held over the course of two days, the first in December 1976 and the second in the following month. Among the complainant's witnesses were two black couples, Barry Johnson and his wife Margaret, and Robert Guy and his wife Louise. Mr. Johnson is a personnel supervisor employed by the Celanese Corporation and his wife is a registered nurse employed by Englewood Hospital. In early 1976 Mr. Johnson was transferred from North Carolina to corporate headquarters in New York City, and he and his wife, later joined by their two children, stayed at the Holiday Inn in Fort Lee continuously from February 1, 1976 to March 24, 1976 while seeking permanent living arrangements. Mr. Guy is an art director employed by the House of Ronnie in New York City. He and his wife stayed at the Holiday Inn on six or seven separate occasions between July and November 1975. Each of the couples had seen newspaper articles in the late spring of 1976 regarding the Holiday Inn's alleged discrimination and had written to the Director advising him of their own experiences, which supported those allegations. The Director never advised respondents of these communications or of his intention to call these four as witnesses. The respondents never, however, sought any discovery available to them pursuant to N.J.A.C. 13:4-8.2(a), which discovery would undoubtedly have revealed that information.[3]
*101 At the conclusion of the complainant's case the deputy attorney general presenting it moved the hearing examiner for leave to amend the complaint to include the four witnesses as individual complainants. The motion was granted over respondents' objection. Ultimately the hearing examiner filed his recommended findings of fact and conclusions of law, sustaining not only the charge of discrimination but also, as part of the remedial order, proposing an award of so-called humiliation damages to each couple in the amount of $1,500. The Director in his final order accepted these recommendations.
Respondents now contend that the proceedings below were fatally defective in these respects: (1) the Director was obliged to consider the matter successfully conciliated by reason of respondents' proffered consent order, (2) the hearing was held beyond the time permitted by the Division's rules of practice, (3) the amendment of the complaint to add the four individual complainants was sought and permitted too late in the proceedings, and (4) the award of humiliation damages was improper.
We address each of these contentions not only within the framework of the applicable statutory and regulative provisions but also in the context of the broad social policy they seek to advance. At this late date in this State's history of undeviating commitment to the elimination from our society of racial discrimination in all its forms, extended discussion of that policy is hardly necessary. Suffice it to say that our courts have from the outset interpreted the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *102 et seq., consistent with the view that acts of racial discrimination are not only wrongs against the individuals discriminated against but also constitute an affront to the "vital interests of the State. In short, such discrimination is regarded as a public wrong and not merely the basis of a private grievance." David v. Vesta Co., 45 N.J. 301, 327 (1965). The Division then was created to provide "an effective enforcement agency in order to eradicate the cancer of discrimination." Jackson v. Concord Co., 54 N.J. 113, 124 (1969). Accomplishment of that end obviously requires liberal interpretation of the broad scope of the Director's remedial powers afforded by N.J.S.A. 10:5-17. See Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399, 409-416 (1973). Cf. Lige v. Montclair, 72 N.J. 5 (1976).
We consider the first of respondents' arguments, addressed to the conciliation proceedings, in light of these principles. N.J.S.A. 10:5-14 directs the Director, should his investigation reveal probable cause to credit the allegations of the complaint, to
* * * immediately endeavor to eliminate the unlawful employment practice or the unlawful discrimination complained of by conference, conciliation and persuasion during a period terminating not later than 45 days from the date of the finding of probable cause.
The statute further prohibits the Attorney General as well as all officers and employees of the Division from disclosing the substance of conciliation conferences.
Following the timely holding of the conciliation conference here, respondents, as noted, offered to enter into a form of "consent order and decree" drafted by them, the import of which was that, without admitting that they had in fact been guilty of proscribed discriminatory practices, they would agree in the future to abide by the law, to advise all employees to do so, to refrain from reprisal against any employee who had assisted the Division in its investigation and to allow the Division "to review the effectiveness of the procedure as provided in this agreement at reasonable times *103 and shall do so promptly at the request of any person that submits information that would necessitate a review." Their claim is that the Director was obliged to accept the proposed order as a final determination of the controversy since its effect was to eliminate the alleged discrimination.
We are persuaded that respondents' claim, predicated on too narrow a reading of the statute, is essentially untenable. The Director is clearly accorded by the statutory scheme and its underlying policy a broad discretion in determining what procedures and sanctions may be necessary in any given case to vindicate both the public and the private wrong therein involved. He is obviously not required to simply accept a respondent's representation that whether or not he violated the law in the past, he promises to refrain from doing so in the future. And that is all that respondents' proposal here amounted to. The Director clearly has the right to attempt to assure elimination of the discrimination by requiring in a binding order that, for example, the provider of a public accommodation post on the premises, in specifically prescribed fashion, notices advising the public of his compliant policies; that he include such notice in all advertising, and that he periodically report to the Division specific details of his operation as will enable the Division to monitor future compliance. Indeed, these are not only customary requirements of Director's orders but were also the terms of the order here appealed from. Additionally, the Director may appropriately determine that prospective elimination of the discriminatory practice can best be effected by the deterrents of public admission by the discriminator that he had in fact violated the law, by public exposure of that fact, or by the imposition of monetary sanctions. See, e.g., so holding, Watkins v. Depart. of Industry, L. & H. Relations, 69 Wis.2d 782, 233 N.W.2d 360 (Sup. Ct. 1975); Kaval Construction Corp. v. State Div. of Human Rights, 39 A.D.2d 347, 334 N.Y.S.2d 341 (Sup. Ct. 1972).
*104 We are aware that in his letter notifying respondents of the unacceptability of their proffered "settlement," the Director did not articulate his reasons for so concluding. Complainant's brief indicates, and respondents' brief does not suggest to the contrary, that those reasons were well known to respondents, who were advised of the conditions the Director required for a successful conciliation. Respondents' counter-offer represented its refusal to accept those conditions. Complainant's brief further indicates that it is because of the confidentiality requirement of N.J.S.A. 10:5-14 that no further details as to the course of conciliation have been provided to us. We are satisfied, however, that in this instance we require no further details thereof in order to sustain the Director's action. In view of the patent inadequacy of respondents' offer, particularly as compared with the terms of the Director's order here ultimately entered, it is clear that the Director cannot be said to have mistakenly exercised his discretion in regarding the conciliation procedure as unsuccessful.
Respondents' next point is completely without merit. They argue that the hearing was required to have been held no later than 20 days following the date of the conciliation conference. In making that assertion they rely on N.J.A.C. 13:14-12.2(c) which, prior to 1972, did in fact so provide. As the Director points out, however, that provision was amended, effective in June of that year, to permit scheduling of hearings at the Director's discretion. There was no prejudice here, either apparent or urged, resulting from the exercise of his discretion in scheduling the public hearing as he did.
Respondents' final challenge to the Director's order relates both to the substance of the award of humiliation damages to the Johnsons and Guys and the procedural technique by which it was effected. The challenge to substance is without merit. The findings below, based on substantial credible evidence, regarding the insult suffered by these four people were adequate to sustain both an award for this *105 category of damage and the amount thereof. See Zahorian v. Russell Fitt Real Estate Agency, supra, construing N.J.S.A. 10:5-17, as authority for such remedial orders in favor of the victims of discrimination.
The more difficult question is whether or not those awards here were properly made in view of the fact that these four victims had not been named as individual complainants until after the conclusion of the complainants' case. The Director's view apparently was that amendment of the complaint so as to add them as complainants, even at that late date, sufficed both to legitimatize the award and to obviate the question of whether such an award can be made in favor of an unnamed victim of discrimination. Respondents urge that the amendment was untimely since the intervention by new complainants at that point in time violated not only N.J.S.A. 10:5-18, requiring the filing of complaints within 180 days after the alleged act of discrimination, but also N.J.A.C. 13:4-6.5(c), requiring motions to intervene to be made "prior to the time of public hearing." We need not consider the limitations problem raised by N.J.S.A. 10:5-18 since we are satisfied that the administrative regulation was in any event clearly violated by the grant of the motion to amend which, however it may have been denominated was, in effect, a motion to intervene.
Our conclusion that the hearing examiner erred in permitting the amendment is not, however, dispositive of the question of the Director's power to award the would-be intervenors humiliation damages. The issue rather, in view of the impropriety of the amendment, is whether or not N.J.S.A. 10:5-17 is construable as permitting an award of monetary damages in favor of an unnamed discriminatee to the same extent as if the discriminatee were a named party. We are satisfied, based both on policy and precedent, that at least in the case of a Director's complaint the statute is properly so construed.
*106 N.J.S.A. 10:5-17 provides in full as follows:
If, upon all evidence at the hearing the director shall find that the respondent has engaged in any unlawful employment practice or unlawful discrimination as defined in this act, the director shall state his findings of fact and conclusions of law and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful employment practice or unlawful discrimination and to take such affirmative action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, or restoration to membership, in any respondent labor organization, or extending full and equal accommodations, advantages, facilities, and privileges to all persons, as, in the judgment of the director, will effectuate the purpose of this act, and including a requirement for report of the manner of compliance. If the conduct violative of this act constitutes any form of unlawful economic discrimination prohibited in section 11, subsections l., m., and n. of this act, the affirmative action taken by the director may include the award of three-fold damages to the person or persons aggrieved by the violation. The director shall have the power to use reasonably certain bases, including but not limited to list, catalogue or market prices or values, or contract or advertised terms and conditions, in order to determine particulars or performance in giving appropriate remedy. If, upon all the evidence, the director shall find that the respondent has not engaged in any such unlawful practice or unlawful discrimination, the director shall state his findings of fact and conclusions of law and shall issue and cause to be served on the complainant an order dismissing the said complaint as to such respondent.
The basic remedial power afforded to the Director, therefore, is "to take such affirmative action * * * as, in the judgment of the director will effectuate the purpose of this act." The intervening text, while expressly illustrative and nonlimiting, is nevertheless instructive. Thus, the Director is granted the explicit power in an employment discrimination case to direct the hiring, reinstatement or upgrading of employees, with or without pay. His power to do so is in no way expressly limited to ordering back pay only in favor of complainant-employees, and the tenor of the statute, moreover, bespeaks no such limitation. We have, therefore, no doubt that if the allegations of a Director's complaint *107 against an unlawfully discriminating employer were sustained, an award of monetary relief by way of back pay in favor of all class members, whether or not named, would be clearly authorized. Cognate federal legislation has indeed been so construed. See, e.g., Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); United States v. Georgia Power Company, 474 F.2d 906 (5th Cir.1973). We see no reason why any other permissible category of monetary damages may not similarly be subject to award in favor of identified but unnamed discriminatees.
In our view, a Director's complaint is a particularly appropriate vehicle for such an award. While not necessarily so denominated, its substance is necessarily that of a class action. That is to say, an act of discrimination tautologically requires that there be both a person committing the act and a victim thereof. When a complaint filed in the name of an individual victim is prosecuted, vindication is sought for the private wrong to him alone. A Director's complaint, however, is typically filed where the alleged discrimination is far-reaching and pervasive. The essence of a Director's complaint is the seeking of vindication for the private wrong done to all the individuals who may have been aggrieved thereby as well as for the wrong done to the body politic as a separate entity. Since it is, therefore, a class of aggrieved individuals on whose behalf the complaint is actually filed, a remedy akin to a class remedy is clearly a fitting exercise of the broad scope of the Director's remedial power. We do not reach the question of the propriety of a monetary award in favor of unnamed and unidentified members of the class since the four individual victims here were identified, testified, and were cross-examined.
We believe, moreover, that our conclusion is supported by the decision of the Supreme Court in Kugler v. Romain, 58 N.J. 522 (1971), which construed the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., as authorizing on an Attorney General's complaint, an award of monetary damages in *108 favor of unnamed consumers victimized by the fraud. The statutory provision relied upon by the court in reaching the result, N.J.S.A. 56:8-8, is similar in import to N.J.S.A. 10:5-17. N.J.S.A. 56:8-8, thus authorizes the Attorney General to seek an injunction against unlawful commercial acts and authorizes the court to
* * * make such orders or judgments as may be necessary to prevent the use or employment by a person of any prohibited practices, or which may be necessary to restore to any person in interest any moneys or property, real or personal which may have been acquired by means of any practice herein declared to be unlawful.
The public policy concern underlying the scheme of the two acts is also similar. Each is predicated upon the legislative perception of defined conduct, indefensible either morally or legally, which is injurious to a broad population spectrum and in respect of which individuals acting for themselves are unable to adequately protect themselves by reason of economic or other limitations. The Legislature has clearly concluded that such conduct can be most effectively dealt with in terms both of enjoining the offensive practices and making victims whole by authorizing a public official to seek a legal remedy accomplishing both injunctive and compensatory objectives. We are, therefore, persuaded that the rationale justifying the remedial scope accorded N.J.S.A. 56:8-8 applies in equal measure to N.J.S.A. 10:5-17.
Sad as the commentary on human nature may be, the fact remains that financial penalty is ordinarily the most effective deterrent. An interpretation of N.J.S.A. 10:5-17 which permits exaction of compensatory damages from those who have chosen to violate the Law Against Discrimination in order to make all their victims whole obviously subserves both the policy and the enforcement predicates of the Act.
The order appealed from is affirmed.
CONFORD, P.J.A.D., Retired (temporarily assigned), concurring and dissenting in part.
The majority here extend *109 the jurisdiction of the Division on Civil Rights to award pecuniary damages in case of discrimination well beyond the previous pertinent decisions of the Supreme Court. Jackson v. Concord Co., 54 N.J. 113 (1969); Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399 (1973). Both of those cases allowed the award of pecuniary damages to complainant parties before the Division. The latter case, allowing the kind of "humiliation" damages awarded in this case, was decided by a bare majority of the court, the dissenters including Justice Hall, 62 N.J. at 416, who wrote the opinion of the Court in Jackson v. Concord, supra.
The reasoning of the Jackson opinion, while recognizing that the Director's remedial jurisdiction under N.J.S.A. 10:5-17 extends to both private and public aspects of the evil of discrimination, see 54 N.J. at 124, seems strongly to imply that in upholding the Director's authority to order reimbursement for out-of-pocket losses attendant upon housing discrimination, the court had in mind the aggrieved complaining individual, 54 N.J. at 125-127, not all members of an affected class whom the Director might seek out to compensate in an action brought by him rather than by them. I cannot believe that the Legislature contemplated giving the Director the power, upon institution by him alone of a discrimination proceeding and the determination of a statutory violation on the part of the respondent, to award humiliation damages to all individuals shown to have sustained discrimination, even if not complainants in the particular case. I am firmly of the view that pecuniary damages can be awarded only to a proper party complainant aggrieved by the discrimination, and I therefore dissent from the contrary holding of the majority.
The position I take requires me to meet the alternative position of the respondents on this appeal  that the amendment of the complaint to make the affected individuals parties to the proceedings  meets the objection set forth in the first part of this dissent. I agree with the majority in rejecting that contention on the basis of the fact that the *110 individuals were added as parties only after the hearing was concluded, contrary to the procedural regulation that motions to intervene be made "prior to the time of the public hearing." N.J.A.C. 13:4-6.5(c). But of even more decisive import, the adding of the parties took place more than 180 days after the alleged act of discrimination, thereby violating the statutory proscription of institution of complaints at such a late date. N.J.S.A. 10:5-18. I think the statutory limitations policy in this administrative area should be respected.
I am in accord with all aspects of the majority determination except its affirmance of the award of humiliation damages.
NOTES
[1] N.J.S.A. 10:5-12(f) declares it unlawful "For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof * * * on account of the race, creed, color, natural origin, ancestry, marital status or sex of such person * * *."
[2] The technique of a complaint by the Director rather than by an individual aggrieved complainant is provided for by N.J.A.C. 13:4-4.2.
[3] N.J.A.C. 13:4-8.2(a) provides in full that

After a Finding of Probable Cause has been issued by the Director, a party may, upon written motion, receive discovery of the following information in the Division's file:
1. Statements made by any person, other than the investigating field representative during the course of the investigation.
2. All factual written reports of the investigating field representative.
3. All factual written data, factual written reports or documentary information.