Don L. McDANIEL, Larry Lewis, Northern Lights Cocktail Lounge, Inc., d/b/a Northern Lights Disco, Appellants/Cross-Appellees,

v.

Karen W. CORY, Marian Berry, Daveed Schwartz, Michael Rogers, Niel Thomas, LaVon Williams, and the Alaska State Commission for Human Rights, State of Alaska, Appellees/Cross-Appellants.

Nos. 4793, 4794.

Supreme Court of Alaska.

July 10, 1981.

Lawrence W. Erwin, Anchorage, for appellants/cross-appellees.

Ivan Lawner, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellees/cross-appellants.

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

This appeal involves questions of administrative remedies and procedure under AS 18.80, the statutory enactment which created and defines the authority of the State Commission for Human Rights.

On November 10, 1976, LaVon Williams filed a complaint with the Alaska State Commission for Human Rights (hereinafter referred to as Commission) charging the Northern Lights Cocktail Lounge, Inc., d/b/a Northern Lights Disco, and its owner, Don McDaniel,[1] (hereinafter collectively referred to, along with Larry Lewis, as Disco Management)[2] with racial discrimination in a place of public accommodation.[3] Pursuant to the administrative procedures set forth in AS 18.80.110,[4] her complaint was investigated by Karen Cory and Daveed Schwartz, Commission investigators. They went to the Northern Lights Disco on the evening of November 12, 1976 and were also subjected to acts of race and sex discrimination at the establishment. The disco apparently charged different admission fees depending upon the race and sex of the individual seeking entry.[5] Cory and

1. During the four year period of this litigation, the Northern Lights Disco closed.

2. Larry Lewis, manager of Northern Lights Cocktail Lounge, Inc., was later also made a respondent in the administrative proceedings. As of November 22, 1977, Larry Lewis was no longer employed at the Northern Lights Disco. The record does not disclose whether he has re-joined the Northern Lights Cocktail Lounge, Inc., organization in the intervening two years.

3. Her complaint alleged that on November 6, 1976, she and her date, Eric Lawrence, went to the Northern Lights Disco. Both Williams and Lawrence are black. As she was leaving, McDaniel pushed her and said, "Well, what about the niggers?" When her date, Lawrence, criticized McDaniel's treatment of Ms. Williams, McDaniel said, "I don't like any of you, and I don't want any of you in this club anyway." An altercation ensued between the two

men resulting in McDaniel being arrested for assaulting Mr. Lawrence.

4. AS 18.80.110 states:
   *Investigation and conciliation.*
   The executive director or a member of the commission's staff designated by the executive director shall informally investigate the matters set out in a filed complaint, promptly and impartially. If the investigator determines that the allegations are supported by substantial evidence, he shall immediately try to eliminate the discrimination complained of, by conference, conciliation, and persuasion.

5. When viewed together, all the complaints and affidavits filed in this case evidence the following admission policy. All persons except unescorted white females were charged $1.00 admission at the door. As a further condition of admission, each patron (except unescorted

Schwartz thereafter filed a separate complaint along with two other individuals, Marian Berry and Michael Rogers, who were present at the disco that evening and also subject to the discriminatory admission price structure. The LaVon Williams complaint was later consolidated with the complaints of Cory, Schwartz, Berry and Rogers.

Pursuant to AS 18.80.110, the normal procedure for settling these complaints of discrimination informally through conference, conciliation and persuasion was attempted. On December 2, 1976, a pre-decision settlement agreement was proposed which essentially evidenced an agreement between the parties that the Disco Management would eliminate the complained-of discriminatory admission price scheme. The pre-decision settlement also contained several clauses providing monetary compensation "in consideration of [his or her] termination of these proceedings" for several of the complainants in the action. The Disco Management agreed to pay compensation in the amount of $25.00 to Marian Berry and Michael Rogers. However, the clause awarding LaVon Williams $2,000.00 met with considerable opposition from the Disco Management. Consequently, before Don McDaniel signed his name on the settlement agreement, the $2,000.00 figure was scratched out and was replaced with $25.00, and a new clause added to the terms of the agreement so that it read: "$25 in consideration of her termination of these proceedings and her agreement to a civil compromise of case # 76–7176."[6] As a result, the pre-decision settlement was never signed by all parties.

Because the settlement procedure failed to produce a settlement which all parties could agree to, the Commission proceeded with formal hearing procedures. On November 24, 1976, the chairperson of the Commission appointed three hearing commissioners who in turn appointed a hearing examiner on December 14, 1976.[7] On December 17, 1976, the hearing examiner held a hearing pursuant to AS 18.80.120.[8]

---

white females) was required to buy a ticket for $2.50 which would then be redeemable for a drink (the price of which could not exceed $2.50). Blacks were required to buy two tickets per person and whites, one per person. The price structure of the disco was as follows:

| | |
|---|---|
| 1) White, unescorted females / no tickets | $ 0 |
| 2) Males (black or white) / two tickets | $ 6.00 |
| 3) White couples / two tickets | $ 7.00 |
| 4) Black female (alone) / two tickets | $ 6.00 |
| 5) Black couples / four tickets | $12.00 |

This admission policy was apparently not strictly enforced; when Ms. Williams and her date went to the disco, they were only charged $2.00 to enter.

6. McDaniel's addition of "case # 76–7176" was in reference to a criminal action for assault and battery filed by Ms. Williams against McDaniel. Although the record on appeal does not contain any details about this case, it was apparently subsequently dismissed.

7. 6 AAC 30.060(b) provides the procedure for appointment of hearing commissioners and hearing examiners:

The chairperson shall appoint at least three hearing commissioners to conduct the hearing or to appoint a hearing examiner pursuant to sec. 55 of this chapter.

6 AAC 30.055(a) further sets out the method for appointment of a hearing examiner by the hearing commissioners:

If the hearing commissioners appointed by the chairperson determine that delay may be avoided or special expertise in the subject matter is required, they will appoint a qualified, unbiased, and impartial hearing examiner with experience in the general practice of law, to take evidence at a hearing and to rule on its admissibility.

8. AS 18.80.120 provides:

*Hearing.* If the informal efforts to eliminate the alleged discrimination are unsuccessful, the executive director shall inform the commission of the failure, and the commission shall serve written notice together with a copy of the complaint, requiring the person, employer, labor organization or employment agency, charged in the complaint to answer the allegations of the complaint at a hearing before the commission. The hearing shall be held by the commission at the place where the unlawful conduct is alleged to have occurred unless the person, employer, labor organization or employment agency requests a change of venue for good cause shown. The case in support of the complaint shall be presented before the commission by the executive director or his designee who shall be a bona fide resident of the state. The person charged in the complaint may file a written answer to the complaint and may appear at the hearing in person or otherwise, with or

Prior to the hearing, the Disco Management moved to dismiss the complaint on the ground that the Commission had no jurisdiction to hold a hearing since conciliation had been effected. Their motion stated:

On December 2, 1976, respondent Don L. McDaniel on behalf of all respondents executed a Pre-Decision Settlement agreement ... prepared by the Alaska State Commission for Human Rights agreeing to "eliminate the discriminations complained of" (A.S. 18.80.110) and respondents have agreed to "eliminate the alleged unlawful discriminatory practices by conference, conciliation, and persuasion," (6 A.A.C. 30.040), with the only amendment by the respondents being that they would not pay LaVon Williams the sum of Two Thousand Dollars ($2,000.00) in consideration of her terminating the proceedings.

The hearing examiner denied the motion and the hearing took place as scheduled.

On January 17, 1977, the hearing examiner issued his proposed memorandum of decision with proposed findings of facts and conclusions of law.[9] He concluded that the admission policies of the disco constituted discrimination based on sex and race in violation of AS 18.80.230(1),[10] but that neither Don McDaniel nor Larry Lewis, as individual respondents, violated AS 18.80.230(1). He also found no violation of that statute with respect to the treatment of LaVon Williams.

On August 11, 1977, the Commission's Executive Director Niel Thomas filed his objections to the hearing examiner's proposed findings of fact and conclusions of law pursuant to 6 AAC 30.095(a).[11] In accordance with 6 AAC 30.095(b),[12] the three hearing commissioners reviewed the written record and the hearing examiner's proposed conclusions. On February 28, 1978, the commissioners issued their final findings of facts and conclusions of law. They agreed with the hearing examiner's conclusion that the admission policies of the disco violated AS 18.80.230(1), but did not follow the hearing examiner's recommended finding with

---

without counsel, and submit testimony. The executive director has the power reasonably and fairly to amend the complaint, and the person charged has the power reasonably and fairly to amend his answer. The commission is not bound by the strict rules of evidence prevailing in courts of law or equity. The testimony taken at the hearing shall be under oath and shall be transcribed at the request of any party to the hearing.

9. The role of the hearing examiner is simply to recommend a decision to the hearing commissioners appointed for the case. 6 AAC 30.055(b) and (c) provide:

(b) On any question which would be determinative of the jurisdiction of the commission or of the culpability of any party, the hearing examiner may only make recommendations to the hearing commissioners.

(c) The hearing examiner shall in due course recommend findings of fact, conclusions of law and a proposed order to the hearing commissioners. The commission attorney, and all parties to the hearing shall be served with copies of the recommendations.

10. AS 18.80.230(1) provides:

It is unlawful for the owner, lessee, manager, agent or employee of a public accommodation

(1) to refuse, withhold from or deny to a person any of its services, goods, facilities, advantages or privileges because of sex, marital status, changes in marital status, pregnancy, parenthood, race, religion, color or national origin[.]

11. Section 6 AAC 30.095(a) states:

(a) After a party, intervener or the attorney for the commission receives the proposed findings of fact, conclusions of law and proposed order recommended by the hearing examiner, that person or his or her representative may, within 10 days thereafter, or within the time fixed by the hearing commissioners, present written objections to the hearing commissioners.

12. Section 6 AAC 30.095(b) sets out the duties of the hearing commissioners:

The hearing commissioners shall then review the written record, proposed findings, conclusions, and objections, and shall issue a final order determining the controversy, making such corrections, amendments or changes in the proposed findings of fact, conclusions of law and proposed order as they consider necessary; or the hearing commissioners may remand the matter to the hearing examiner with directions to take additional evidence, rewrite the proposed findings, conclusions and proposed order, or take any other action they consider appropriate.

respect to LaVon Williams' complaint. They concluded that her treatment at the disco was racially motivated and that Don McDaniel did in fact violate AS 18.80.230(1). The commissioners issued their final order in late summer, 1978 requiring Don McDaniel and Northern Lights Disco to pay LaVon Williams $600.00 as compensatory and punitive damages in addition to refraining from racially motivated discriminatory treatment of patrons and eliminating their admission policy which discriminated among customers on the basis of race and sex.

This decision was appealed to the superior court by the Disco Management pursuant to AS 18.80.135.[13] In his decision dated April 19, 1979, Judge Peter Kalamarides reversed the Commission's award of $600.00 to LaVon Williams finding no authority under Alaska law which gave the Commission the ability to award damages to complainants in public accommodation discrimination cases. He upheld the rest of the Commission's decision, finding no error in their proceedings. On May 15, 1979, after the

untimely death of Judge Kalamarides, Judge Victor D. Carlson signed the order and judgment reversing the Commission's $600.00 damage award to LaVon Williams, dismissing the complaints against Larry Lewis, and awarding the Commission $1,000.00 in costs and attorney's fees. This decision is the subject of the appeal and cross-appeal now before this court.[14]

■ The central issue in this case is whether the Commission has the power to award compensatory and punitive damages to complainants in cases of discrimination in places of public accommodation. The superior court held that the authority to do so did not exist, and the Commission appeals this decision.[15]

When AS 18.80 was originally enacted, no provisions were made giving the Commission the power to award damages, either compensatory or punitive, at the conclusion of an administrative hearing except for an award of back pay in employment discrimination cases. AS 18.80.130 [16] originally au-

13. AS 18.80.135(a) provides for judicial review of administrative decisions:
   A complainant, or person against whom a complaint is filed or other person aggrieved by an order of the commission, may obtain judicial review of the order in accordance with AS 44.62.560–44.62.570.

14. The Disco Management has appealed on the grounds that no hearing should have been held because a settlement was reached at the conciliation stage. They further argue that the Commission erred in reversing the decision of the hearing examiner, and that the award of attorney's fees was incorrect. The Commission has cross appealed on the issue regarding their power to grant compensatory and punitive damages to victims of discrimination in public accommodations.

15. The Commission attempted on two occasions to award compensatory and punitive damages to Ms. Williams. At the settlement negotiation stage (conference and conciliation), a clause awarding $2,000.00 to Williams was inserted in the agreement and arguably was the sole reason for the management's refusal to sign the agreement as written, thereby requiring the Commission to proceed to a hearing. The second occasion was in the commissioners' final order which required the Disco Management to pay $600.00 in damages.

16. The provisions of AS 18.80.130, as amended in 1975, are as follows:

(a) At the completion of the hearing, if the commission finds that a person against whom a complaint was filed has engaged in the discriminatory conduct alleged in the complaint, it shall order him to refrain from engaging in the discriminatory conduct. The order shall include findings of fact, and may prescribe conditions on the accused's future conduct relevant to the type of discrimination. In a case involving discrimination in
   (1) employment, the commission may order any appropriate relief, including but not limited to, the hiring, reinstatement or upgrading of an employee with or without back pay, restoration to membership in a labor organization, or his admission to or participation in an apprenticeship training program, on-the-job training program, or other retraining program;
   (2) housing, the commission may order the sale, lease or rental of the housing accommodation to the aggrieved person if it is still available, or the sale, lease, or rental of a like accommodation owned by the person against whom the complaint was filed if one is still available, or the sale, lease or rental of the next vacancy in a like accommodation, owned by the person against whom the complaint was filed; the commission may award actual damages which shall include, but not be limited to, the expenses incurred by the complainant for obtaining alternative housing or space; for storage of goods and ef-

thorized the Commission to issue orders to enjoin prohibited discriminatory conduct, but it neither specifically provided for nor prohibited the awarding of damages with the exception of back pay. In 1975, the legislature amended AS 18.80.130 to provide monetary compensation for complainants in two particular situations. In cases of employment discrimination, the Commission was given the authority to "order any appropriate relief." AS 18.80.130(a)(1). In housing discrimination cases, the Commission was empowered to "award actual damages" which included, but was not limited to, "expenses incurred by the complainant for obtaining alternative housing or space; for storage of goods and effects; for moving and for other costs actually incurred as a result of such unlawful practice or violation." AS 18.80.130(a)(2). There was and is no specific provision for the awarding of monetary compensation to complainants in public accommodation discrimination cases. It is therefore the position of the Disco Management that this omission indicates a legislative intent to limit the remedies available in public accommodation discrimination complaints to only those in equity, i. e., orders enjoining the discriminatory conduct. See AS 18.80.130(a).

The Commission, on the other hand, argues that the mere omission of a damage provision does not indicate a legislative intent to completely bar that remedy. In support of this argument they rely on a prior decision of this court where we held that a court is authorized to award compensatory and punitive damages for employment discrimination even though the statute, AS 18.80.220(a)(1), did not specifically so provide. *Loomis Electronic Protection, Inc. v. Schaefer,* 549 P.2d 1341, 1343 (Alaska 1976). We stated in *Loomis:*

> fects; for moving and for other costs actually incurred as a result of such unlawful practice or violation.
> (b) The order may require a report on the manner of compliance.
> (c) If the commission finds that a person against whom a complaint was filed has not engaged in the discriminatory conduct alleged in the complaint, it shall issue and cause to be served on the complainant an order dismissing the complaint.

In view of the strong statement of purpose in enacting AS 18.80, and its avowed determination to protect the civil rights of all Alaska citizens, we believe the legislature intended to put as many "teeth" into this law as possible. We fail to see how, consistent with that purpose and intent, the legislature could have contemplated a statutory scheme that would not have included the right to recover damages.

*Id.* at 1343 (footnote omitted). The Commission therefore argues that on the basis of our language in *Loomis,* in order "to put as many 'teeth' into this law as possible" the legislature could not have intended to deny the remedy of compensatory and punitive damages to complainants in public accommodation discrimination cases. *Loomis,* however, is significantly different from the case at bar. The discrimination complaint in *Loomis* was brought as a civil action, and in reaching our decision we relied heavily on the broad language of AS 22.10.020(c) which empowers the superior court to order "any other relief, including the payment of money." In contrast, the damages in this case were awarded by an administrative agency having no specific statutory authority to do so. We, therefore, refuse to rely on *Loomis* and will look only to the language of the statute to interpret the powers of the Commission.

Some states which have "human rights" provisions in their statutes specifically authorize the administrative body charged with enforcing and implementing the statute the power to award damages. For example, in New York, the statute allows awards for "compensatory damages." This has been interpreted to include recovery for

> (d) A copy of the order shall be filed in all cases with the attorney general of Alaska.
> (e) The commission may order payment of reasonable expenses, including reasonable attorney fees to any private party before the commission when the commission, in its discretion, determines the allowance is appropriate.

mental pain and suffering. *See* N.Y. Exec.Law § 297(4)(c)(iii) (McKinney 1972 and Supp.1972–1979); *Chance v. Frank's Beauty Salon*, 35 A.D.2d 304, 316 N.Y.S.2d 236, 237–38 (1970).

As another example, the Massachusetts Anti-Discrimination Law explicitly authorizes the Massachusetts Commission Against Discrimination to award damages not exceeding $1,000.00 in housing and real estate discrimination cases. Mass.Gen.Laws Ann. ch. 151B, § 5, para. 3 (West 1971). *See Massachusetts Comm'n Against Discrimination v. Franzaroli*, 357 Mass. 112, 256 N.E.2d 311, 313 (1970).

Where no specific provision exists, the availability of damages as a remedy has been resolved through statutory interpretation. Some jurisdictions broadly construe general language in the statutes to imply the legislative intent to grant such authority. *See, e. g., Jackson v. Concord Co.*, 54 N.J. 113, 253 A.2d 793, 800–01 (1969) (housing); *Williams v. Joyce*, 4 Or.App. 482, 479 P.2d 513, 520–24 (1971) (housing). Other states, however, apply a rule of strict construction and refuse to uphold administrative awards of compensatory or punitive damages absent specific statutory authority. *Iron Workers Local No. 67 v. Hart*, 191 N.W.2d 758, 767–68 (Iowa 1971) (employment); *Ohio Civil Rights Commission v. Lysyj*, 38 Ohio St.2d 217, 313 N.E.2d 3, 7 (1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975) (housing); *Loyal Order of Moose Lodge No. 145 v. Pennsylvania Human Relations Commission*, 16 Pa. Cmwlth. 433, 328 A.2d 180, 184 (1974) (public accommodation); *Straw v. Pennsylvania Human Relations Commission*, 10 Pa. Cmwlth. 99, 308 A.2d 619, 621–22 (1973), *aff'd on rehearing*, 387 A.2d 75 (1978) (housing). We are in agreement with the latter jurisdictions.

Administrative agencies rest their power on affirmative legislative acts. They are creatures of statute and therefore must find within the statute the authority for the exercise of any power they claim. 1 Am. Jur.2d *Administrative Law* § 70, at 866 (1962). In the instant case, no statutory authority exists which gives the Commission the power to award damages to complainants in public accommodation discrimination cases. When the statute was amended in 1975, such an omission could have been easily remedied as was the case in both employment and housing discrimination. The legislature chose not to take such action. We therefore hold that the power of the Commission is limited to those remedial actions specifically provided by statute.

The Commission argues that if a respondent, *e. g.*, the Disco Management, is not forced to pay damages, the purpose of the statute cannot as a practical matter be effectuated. This would result in many situations where no meaningful relief would be available to injured parties such as LaVon Williams. If there is merit to this argument, the legislature, rather than this court, must remedy the defect. We are not convinced, however, that such is the case. The Commission has been given broad powers to enjoin and compel affirmative action to eliminate discriminatory practices and may construct an appropriate remedy without resort to damages. *See* AS 18.80.130. *See also Iron Workers Local No. 67 v. Hart*, 191 N.W.2d 758, 768–71 (Iowa 1971). And should the complainant wish to recover damages from the respondent, recourse to the courts is always available. *Id.* at 767. *See also Loomis Electronic Protection, Inc. v. Schaefer*, 549 P.2d 1341, 1343 (Alaska 1976).

Further, it should be noted that even though monetary compensation is available to complainants in employment and housing discrimination cases, it appears that the Commission's power to award damages extends only to those situations where there is some direct, calculable pecuniary loss, such as back pay or housing expenses. Therefore, even if some power to award damages could be implied, where there is no evidence of any actual damages suffered by LaVon Williams, the award in the instant case clearly exceeded the scope of the Commission's remedial powers.

In conclusion, we affirm the decision of the superior court in holding that the Commission does not have the authority under AS 18.80 to award compensatory and punitive damages to complainants in cases of public accommodation discrimination.

■ In light of our decision that the Commission did not have the power to compel the Disco Management to pay damages to LaVon Williams, we must now consider whether the Commission's actions in proceeding to a hearing were proper under the statutory procedures set forth in AS 18.80.-110–.120.

It is the contention of the Disco Management that the Commission was precluded from holding a hearing because the dispute had already been settled by conciliation. When the settlement agreement was originally drafted and given to the Disco Management to sign, the discriminatory price structure apparently had been abandoned and the Disco Management fully agreed to comply with all other demands, except for the award of $2,000.00 to LaVon Williams. As an indication of this disagreement, Northern Lights Disco owner Don McDaniel signed his name to the settlement agreement, but crossed out the provision awarding Williams $2,000.00 and instead inserted $25.00. They now argue that since McDaniel signed the settlement agreement and since the Commission had no authority to award damages, conciliation was reached and under the procedures set forth in the statutes, no hearing should have been held. We disagree.

When the Commission drew up the settlement agreement, they in effect made an offer to settle. Even if the Disco Management had agreed to each and every clause, save the LaVon Williams clause, when Don McDaniel scratched out the award of $2,000.00 and substituted $25.00, he changed the terms of the offer so significantly that instead of accepting the Commission's offer to settle, he was in effect proposing a counter-offer. This counter-offer was never accepted by the Commission. After Don McDaniel signed and changed the damage provision to LaVon Williams, no other party

signed the settlement agreement. It would be stretching the facts of the case to state that a settlement was reached when only one individual signed the settlement agreement.

Although it is now decidedly clear that the Commission was without authority to award compensatory damages, at the time the settlement agreement was drawn up, they believed that they did have this power and made the demand under that assumption. Further, there is no evidence in the record to indicate that the demand was not made in good faith. To hold after the fact that this clause should be excised from the agreement and that the remaining clauses be enforced would be to force upon the Commission settlement terms that it never agreed to.

Finally, a further indication that no settlement was reached is the fact that none of the procedural notices upon which a settlement is finalized were complied with. For example, 6 AAC 30.020(d) states:

If the commission succeeds in its endeavors at the conference, conciliation and persuasion, it shall mark the case accordingly and notify the parties by certified mail, return receipt requested, of the terms of conciliation and of the complainant's right to apply to the chairperson for reconsideration of such terms of conciliation in accordance with sec. 30 of this chapter.

In light of the fact that no settlement was achieved, the Commission did not err in proceeding to a hearing pursuant to AS 18.80.120. Under the statute, the only bar to holding a hearing was if a final settlement had been entered. Since none existed, proceeding to a hearing was proper.

The Disco Management has also appealed the superior court's finding that the Commission's failure to adopt the proposed findings of the hearing examiner with respect to the LaVon Williams incident was proper. We affirm the superior court decision on this issue.

The duties of a hearing examiner are to *recommend* findings of fact, conclusions of

law, and a proposed order to the hearing commissioners. As such, the determinations of the hearing examiner are not binding on the Commission. Upon receipt of the hearing examiner's proposed findings, 6 AAC 30.095(b) states that the hearing commissioners shall review the conclusions of the hearing examiner and "shall issue a final order determining the controversy, *making such corrections, amendment or changes* in the proposed findings of fact, conclusions of law and proposed order as they consider necessary." (Emphasis added.) Thus, should the hearing commissioners disagree with the hearing examiner's findings they are free to substitute their judgment.

■ The only limitation on the Commission is that the findings must be supported by substantial evidence. *Alaska Department of Labor v. Boucher*, 581 P.2d 660, 662 (Alaska 1978); *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169–70 (Alaska 1974). *See also* K. Davis, Administrative Law Text § 10.05, at 222–23 (1972). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963).

■ Therefore, we must only determine whether there was substantial evidence to support the Commission's decision. We believe that there was and find no error in the Commission's failure to accept the hearing examiner's proposed conclusions.

■ At the conclusion of the administrative proceedings, the Commission, in its discretion, refused to award attorney's fees to both parties. This decision was affirmed by the superior court. However, in the Amended Order and Judgment, entered August 24, 1979, Judge Carlson awarded the state $1,000.00 in costs and attorney's fees in the superior court appeal. The Disco Management argues both that the Commission abused its discretion in failing to award them attorney's fees after the administrative hearing and that the superior court erred in its award to the state.

On their first claim, the Disco Management argues that even though they were the losing party at the administrative hearing stage, attorney's fees should have been awarded to them because the actions of the Commission forced them to incur fees unnecessarily. The basis for this argument is that no hearing should have been held because the case was already settled by conciliation.

AS 18.80.130(e) states that the Commission "may order payment of reasonable expenses, including reasonable attorney fees to any private party before the commission when the commission, in its discretion, determines the allowance is appropriate." [17] In this case, we are not convinced that the Commission abused its discretion in refusing to award attorney's fees.

■ Regarding the award of costs and attorney's fees in the superior court appeal, we note that such an award, in an appeal to the superior court from the determination of an administrative agency, is governed by the provisions of the Appellate Rules, not the Civil Rules. *Kodiak Western Alaska Airlines v. Bob Harris Flying Serv.*, 592 P.2d 1200, 1204–05 (Alaska 1979). As stated in *Kodiak Western*, the applicable rule was former Appellate Rule 29(d),[18] which gave the appellate court discretion in deciding whether to award attorney's fees. *Id.* at 1205. *Accord, Conway, Inc. v. Cleopatra Ross*, 627 P.2d 1029, 1032, (Alaska, 1981).

■ In the present case, Disco Management prevailed in both the superior

---

17. *See also Hotel and Restaurant Union v. Alaska State Commission for Human Rights*, 595 P.2d 653, 654–56 (Alaska 1979).

18. Former Appellate Rule 29(d) provided:
    Where costs are allowed in this court, attorney's fees *may* also be allowed in an amount to be determined by the court. If the court determines that an appeal or cross-appeal is frivolous or that it has been brought simply for purposes of delay, actual attorney's fees may be awarded to the appellee or cross-appellee.
    (Emphasis added.) This provision has since been recodified as Appellate Rule 508(e). *See also* Alaska R.App.P. 601(b).

court and this court on the central issue of whether the commission had the power to award damages, thereby requiring the reversal of the commission's decision. Therefore, Disco Management was the prevailing party, and we hold that the trial court abused its discretion in awarding costs and attorney fees to the state.[19]

In conclusion, we remand this case to the Commission for reconsideration of the appropriate remedy to be applied. We note that in light of the stated policy goal of AS 18.80 to settle all disputes possible through the informal means of conference, conciliation and persuasion, the Commission may wish to remand for further conciliation efforts.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this decision.

RABINOWITZ, C. J., dissents in part, concurs in part.

COMPTON, J., not participating.

RABINOWITZ, Chief Justice, dissenting in part, concurring in part.

The majority notes that the central issue here concerns the Commission's authority to award damages in a case of discrimination in a public accommodation. It goes on to conclude that because the Disco Management prevailed on this issue, appellees were not the prevailing party for the purpose of an award of fees under the Appellate Rules. I disagree with this conclusion.

The court has found the damages issue to be sufficiently severable from the others to justify holding for the Disco Management on the issue of the damages award and for appellees on the other issues: The Commission's treatment of the hearing officer's recommendation, including the finding that McDaniel had discriminated against complainants, the Commission's jurisdiction to

hold hearings on the matter, and appellants' claim for attorney's fees incurred in the administrative hearing. In my view these other issues were sufficiently significant to sustain the superior court's conclusion that appellees prevailed in this litigation, and I would therefore affirm the superior court's award of attorney's fees to the state.

I concur in the majority's resolution of all other issues raised in this appeal.

---

**19.** We reject the Disco Management's argument that the award of attorney's fees was improper because the state was not a named party to this action. Such argument is without merit. AS 44.80.010 states that whenever a suit is brought against an agency of the state, the state is a proper party to the action without having it specifically designated as such. Where one of the named parties to the suit is a state agency, e. g., the Commission for Human Rights, the state is also a party to the action and may be awarded attorney's fees, if such an award is otherwise proper.