NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2902-22

JILL MAYER,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF
THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

> **APPROVED FOR PUBLICATION**
> **October 24, 2024**
> **APPELLATE DIVISION**

Argued September 18, 2024 – Decided October 24, 2024

Before Judges Currier, Marczyk and Paganelli.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx0187.

William M. Tambussi argued the cause for appellant (Brown & Connery, LLP, attorneys; William M. Tambussi and Joseph T. Carney, on the briefs).

Joseph A. Palumbo, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Robert E. Kelly, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

CURRIER, P.J.A.D.

In this matter, we consider whether an employee in the Public Employees' Retirement System (PERS) who submits an application for retirement benefits and thereafter, prior to the effective retirement date, begins the process to attain a nomination for a Superior Court judgeship, has violated N.J.A.C. 17:1-17.14(a)(2), which requires a person collecting PERS retirement benefits to complete 180 days severance from their employment prior to any further public employment in New Jersey. Specifically, under the regulation, if the retiree has a "pre-arranged agreement for reemployment" prior to their effective retirement date, the retiree has not satisfied the severance of employment requirement. N.J.A.C. 17:1-17.14(a)(2)(v).

Here, appellant Jill Mayer took steps towards a judicial nomination prior to her effective retirement date. She was nominated by Governor Phillip D. Murphy and confirmed by the Senate in the weeks after her retirement date.

Prior to taking the judicial oath, the Division of Pensions and Benefits (Division) advised Mayer there was no complete termination of the employment relationship because of the "pre-planning that occurred prior to [her] December 1, 2021 retirement and during the 180 days after [her] retirement." Therefore, if Mayer began employment as a Superior Court

A-2902-22

judge, she could no longer collect her PERS pension and benefits. The PERS Board (Board) affirmed the decision.

After a careful review, we determine the Board mistakenly applied the regulation to these specific circumstances. The regulation prohibits a "pre-arranged agreement," not "pre-planning" that occurs prior to a retirement date. The nature of the judicial selection process precludes any ability to make an "arrangement" for the position as an individual seeking a judgeship has no control over the process. There also was no "agreement" that Mayer would be offered the judgeship until, at the earliest, the date the Senate confirmed the nomination, which did not occur until after her retirement date.

Arguably, the Senate confirmation could be described as an offer of employment and there will be no "agreement" until Mayer takes the oath of office. Certainly, there was a "mutual understanding" after confirmation. But we need not parse the semantics since this agreement or understanding occurred only after the effective retirement date.

And, as Mayer has not yet taken the judicial oath, considerably more than 180 days have passed since she terminated her prior employment. Therefore, we reverse the Board's final administrative decision.

A-2902-22

I.

After working for the State of New Jersey in the Department of Law and Public Safety, Division of Criminal Justice, for more than twenty-five years,[1] Mayer submitted an application in August 2021 for retirement benefits effective December 1, 2021. On this application, Mayer certified she had "made no pre-arrangement to return to public employment after retirement in any capacity." The Division submitted its Certification of Service and Final Salary on September 5, 2021, also certifying "that the employee did not make a pre-arrangement to return to employment with this location in any capacity."

In late October 2021, Mayer submitted a Judicial Questionnaire to the Governor's Office "in consideration for appointment to the New Jersey State Judiciary." She was interviewed by the Governor's Office on November 18.

On December 8, 2021, the Bureau of Retirements (the Bureau) notified Mayer that the Board had approved her application for retirement benefits effective December 1, 2021. The Bureau informed Mayer:

> If you are considering working after retirement, you should be aware of the restrictions imposed by law and regulations governing post-retirement employments. It is your responsibility to inform your prospective employer that you are receiving retirement benefits from a New Jersey public retirement system,

---

[1] Mayer served as the Acting Camden County Prosecutor for the final two years of her employment.

and to understand the impact employment will have on those retirement benefits. In some instances, your retirement benefits may be suspended or even cancelled entirely, and if this occurs, you will be responsible for the repayment of any benefits you were not entitled to receive. You may also be required to re-enroll in your former retirement system or a different retirement system, and make pension contributions to that system. Please read Fact Sheet #86 regarding Post-Retirement Employment Restrictions located on the Division of Pensions and Benefits' website . . . .

Upon reading Fact Sheet #86, if you have any additional questions regarding return to public employment, please contact the Office of Client Services . . . .

On December 13, Governor Murphy issued a Notice of Intention (NOI)[2] for the nomination for appointment of Mayer as a Judge of the Superior Court. On December 19, Mayer submitted a Senate Judiciary Committee Questionnaire.

A week later, on December 28, Mayer contacted a Judges' Benefits Aide from the Administrative Office of the Courts—Human Resources (HR employee), asking for guidance regarding collecting her PERS pension and "opt[ing] out of participating in any judicial pension or health benefits." The HR employee replied quickly, advising Mayer she could waive enrollment in

---

[2] "No nomination [for the office of Judge of the Superior Court] shall be sent to the Senate for confirmation until after [seven] days' public notice by the Governor." N.J. Const. art. VI, § 6, ¶ 1.

the Judicial Retirement System (JRS) and forego health benefits. The HR employee referred Mayer to an employee (pension representative) more familiar with the pension benefits to "provide any important information regarding break in service requirements." The pension representative responded promptly, informing Mayer of the requirement to "have a bona fide severance of employment which would be [thirty] days from [her] retirement date or from [her] [B]oard approval [date], which was [December 8, 2021]."[3]

On January 3, 2022, Governor Murphy officially nominated Mayer to the position of Judge of the Superior Court. Her nomination was approved by the Senate Judiciary Committee and forwarded to the Senate for confirmation.

On the morning of January 10, 2022, shortly before the Senate was scheduled to vote on Mayer's nomination, the pension representative contacted Mayer and left her the following voicemail:

> Hi Jill, this is [the pension representative] from Pensions giving you a call[.] [I] just want you to hold off on accepting any position in order to [not] jeopardize your PERS pension Prosecutor[s'] Part Retirement[.] [I] did send this to external audit to review and they do believe that there might be an issue because . . . you are retiring from the state system and . . . you would be going into another state

---

[3] This information was incorrect. There is a thirty-day break in service requirement if a retiree accepts employment with another employer in a position which is not covered by the retiree's retirement system. See N.J.A.C. 17:2-6.2.

system, another job with the judiciary, [so] you actually need 180 [days] bona-fide severance . . . . [J]ust hold off on any acceptance and I'm just waiting for upper management to review so it will take some time alright?

Mayer's nomination was confirmed by the Senate later that day.

On January 19, 2022, the pension representative spoke with Mayer and memorialized the conversation in an email, providing Mayer with the applicable regulation—N.J.A.C. 17:1-17.14(a)(2)—and advising if she accepted the Judiciary position, she would not meet the 180-day bona fide severance retirement requirement. The representative further stated that if Mayer did not sever her employment for 180 days, she could no longer collect her PERS benefits. An auditor with the Division's external audit unit provided Mayer with the same information.

In June 2022, Mayer contacted the pension representative and asked for confirmation that the Division concurred with her calculations that the 180-day bona fide severance period began on December 8, 2021, and ended on June 6, 2022. Mayer advised she intended to meet with the Camden County Assignment Judge to schedule a swearing-in date. The representative replied she would let Mayer know when the representative received an answer.

In August 2022, the Division's Acting Director, John D. Megariotis, informed Mayer by letter that the Division "ha[d] reviewed the scenario under

which [Mayer was] requesting to accept a judgeship after [her] retirement from the PERS Prosecutors' Part."  Megariotis referenced N.J.A.C. 17:1-17.14(a)(2) and concluded that if Mayer accepted the position of Superior Court Judge "at any time in the future, [her] retirement would be non-bona fide because there would not have been a complete termination of employment of the employer/employee relationship."

Megariotis explained:

> As previously indicated, your employer for the purposes of determining bona fide severance of employment is the State of New Jersey.  Since you were employed by the State of New Jersey prior to your retirement from PERS Prosecutors' Part, you must have a complete termination of the employer/employee relationship with the State of New Jersey for a period of at least 180 days from the date of your retirement, with no pre-arranged agreement, such as pre-planning or promise of any future full or part time employment, with the State of New Jersey.

Megariotis stated the employer/employee relationship was not severed "due to pre-planning that occurred prior to [her] December 1, 2021 retirement and during the 180 days after [her] retirement."

Mayer appealed the Division's decision to the Board, which affirmed the decision on January 13, 2023, "substantially for the reasons set forth in" the Division's August 2022 letter.  The Board stated:

> Based on the undisputed factual record as detailed above, the Board found that [] Mayer was in violation

8

of the return to employment regulations. The records provided establish that [] Mayer has pre-planned her return to public employment by engaging in the judicial nomination process during the months of October, November[,] and December 2021, immediately prior to her December 1, 2021, retirement, in violation of N.J.A.C. 17:1-17.14. Because [] Mayer did not separate from her previous employment according to both IRS and PERS rules and regulations, her retirement would be deemed non-bona fide if she were to have accepted the Judgeship. Therefore, the Board determined that were [] Mayer [] to accept this judicial nomination her retirement would be deemed non-bona-fide; she would not be able to collect a Prosecutors Part pension benefit and a judicial salary simultaneously. Additionally, a determination that the retirement was not bona fide requires the return of all benefits received during the invalid retirement.

After Mayer again appealed to the Board, it reconsidered the appeal but reaffirmed its previous determination in an April 20, 2023 final administrative determination, finding Mayer "ineligible to collect her PERS Prosecutors['] Part pension and accept a Judgeship with the State of New Jersey." The Board stated:

[Mayer] sought to return to the same employer well before her retirement became due and payable, and took substantial steps toward doing so during that time period. The process of appointment was completed days after her original due-and-payable date, and months before 180 days had passed since her retirement date.

The Board concluded that Mayer "had pre-planned her return to public employment by engaging in the judicial nomination process during the months of October, November[,] and December 2021, immediately prior to her December 1, 2021 retirement in violation of N.J.A.C. 17:1-17.14." Therefore, her retirement was deemed non-bona fide, and Mayer could not begin work as a Superior Court judge and simultaneously collect her PERS pension benefits.

II.

On appeal, Mayer contends the Board erred in its decision because she did not terminate her employment relationship with the State of New Jersey with a pre-arranged agreement for reemployment. Therefore, her retirement complied with a bona fide severance as defined under N.J.A.C. 17:1-17.14(a)(2), and she was permitted to accept a Superior Court judgeship and collect her PERS pension and benefits.

Our review of an administrative agency's decision is limited. Allstars Auto Grp., Inc. v. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018).

> We will not reverse [the] agency's decision unless: (1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record.
>
> [Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007).]

Although "we must give deference to the agency's findings of facts, and some deference to its 'interpretation of statutes and regulations within its implementing and enforcing responsibility,' we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 551 (2008) (first citing Jackson v. Concord Co., 54 N.J. 113, 117-18 (1969); then quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997); and then quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

The Division, "part of the Department of the Treasury, administers the State public pension systems," including PERS and the JRS. Burgos v. State, 222 N.J. 175, 184 (2015). PERS is a "qualified governmental defined benefit plan[] pursuant to sections 401(a) and 414(d) of the federal Internal Revenue Code of 1986 [(IRC)] . . . , as amended, or such other provision of the federal Internal Revenue Code, as applicable, . . . , and other guidance of the federal Internal Revenue Service." N.J.S.A. 43:3C-18(a) (citing 26 U.S.C. §§ 401(a), 414(d)).

The New Jersey Legislature tasked the Division with protecting the qualified status[4] of the State's pension plans. N.J.S.A. 43:3C-18(c). To do so, the Legislature authorized the Division Director to modify the provisions of the PERS plan—"by promulgating a rule or regulation" "when a modification is required to maintain the qualified status of the retirement plans under the Internal Revenue Code of 1986, applicable regulations of the U.S. Treasury Department or other guidance of the federal Internal Revenue Service." Ibid. The governing regulation here, N.J.A.C. 17:1-17, was directly promulgated by the Division's Acting Director pursuant to that authority. N.J.S.A. 43:3C-18(c); see Special Adopted New Rules, 44 N.J.R. 1157(a) (Apr. 2, 2012) (codified at N.J.A.C. 17:1-17).

N.J.A.C. 17:1-17.14 requires that PERS "pay retirement benefits to a member only when there is a bona fide severance from employment," pursuant to IRC §§ 401(a), 414(d). N.J.A.C. 17:1-17.14(b), (c). A severance from employment is not "bona fide" if either the separation from the employer is for fewer than 180 days, or the employee's relationship with the employer is not "complete[ly] terminat[ed]." N.J.A.C. 17:1-17:14(a)(2).

---

[4] The Board explains that this "qualified status" gives all PERS members the significant tax advantage of deferring tax on the income used to fund their pensions (i.e., pre-tax contributions).

The regulation lists five conditions under which an employee's relationship with the employer has not been "complete[ly] terminat[ed]":

    i.     Employment or reemployment in a part-time position;

    ii.    Employment or reemployment in a position that is not covered by the Defined Benefit Plan;

    iii.   A change in title;

    iv.   Employment or reemployment as a contract employee, a leased employee, or an independent contractor; or

    v.    Termination of employment with a pre-arranged agreement for reemployment.

Notably, conditions i.- iv. "do[] not constitute a complete termination of the employee's relationship with the employer" if they occur within 180 days of the employee's termination of employment. See N.J.A.C. 17:1-17.14(a)(2)(i) to (iv). However, subparagraph (v) describes a condition that invalidates the "complete termination of the employee's relationship with the employer" if it occurs at the time of the "[t]ermination of employment." If the employee has a pre-arranged agreement with the employer for reemployment at the time of the termination of employment, the employee does not have a bona fide severance from employment, regardless of when the employee returns to work for the same employer. See N.J.A.C. 17:1-17.14(a)(2)(v).

Mayer asserts the Board erred in finding she violated N.J.A.C. 17:1-17.14(a)(2) because her retirement was bona fide effective December 1, 2021, and on that date, she did not have a "pre-arranged agreement for rehire by the State."

After a careful review, we are satisfied the Board did not apply the standard articulated in the governing regulation and its interpretation of that standard was unreasonable.

In its final administrative determination, the Board concluded Mayer violated N.J.A.C. 17:1-17.14 because she "had pre-planned her return to public employment by engaging in the judicial nomination process during the months of October, November[,] and December 2021, immediately prior to her December 1, 2021, retirement." However, "pre-planning" is not the regulatory language; instead, a person may not collect their PERS pension if they have retired with a "pre-arranged agreement for reemployment." N.J.A.C. 17:1-17.14(a)(2)(v) (emphasis added).

The meaning of the phrase "pre-arranged agreement" in N.J.A.C. 17:1-17.14(a)(2)(v) is plain, even without resorting to dictionary definitions or rules of construction. The words are commonplace and universally understood.

However, a reference to dictionary definitions is useful to confirm the unequivocal meaning of the phrase. An "agreement" is a "mutual

understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." Black's Law Dictionary 84 (12th ed. 2024). "Arrange" can mean both "to make preparations for" and "to bring about an agreement," Merriam-Webster's Collegiate Dictionary 68 (11th ed. 2020), but here its past participle is used in the regulation as an adjective to modify "agreement." The prefix "pre" means "in advance" or "beforehand." Id. at 975. On its face, then, this phrase refers to a "mutual understanding" between parties that was either planned or agreed to before the designated event—the "[t]ermination of employment."

Extending that interpretation to include "pre-planning" or taking "substantial steps toward" reemployment is not a reasonable interpretation of the regulation. Therefore, the Board's interpretation of the unambiguous phrase "pre-arranged agreement" to include an employee's unilateral "pre-planning" a return to employment is not reasonable and does not require our deference.

Under the plain language of the regulation, we consider then whether Mayer had a pre-arranged agreement to return to state employment when she retired on December 1, 2021. We determine she did not.

Regardless of a person's intent, hope and planning, the process to secure a Superior Court judgeship is unique and beyond the individual's control. A person must complete a comprehensive questionnaire and be selected by the Governor's office for an interview. Thereafter, the individual must successfully pass extensive background checks into their personal and professional lives, criminal history, and financial status. The person is evaluated by local and statewide vetting committees and must attain the assent of their local senators. If the Governor chooses to nominate an individual for a judgeship, the person must appear before the Senate Judiciary Committee for questioning and its approval. And finally, the nomination must be confirmed by the full Senate.

Mayer was confirmed by the Senate in January 2022, after her December retirement date. There was no agreement prior to her retirement date for her to return to state employment. The State did not offer her employment before she retired.

Although she clearly planned and took steps towards attaining a judgeship prior to her retirement, those were unilateral actions. Whether she eventually secured a gubernatorial nomination and Senate approval was not within her control. She could not and did not "arrange" an "agreement" prior to her retirement. Moreover, the nomination and Senate approval did not

16

occur until after Mayer's retirement date. Therefore, the January 2022 Senate confirmation does not affect a determination of Mayer's bona fide severance of service, because it was not in place before her "[t]ermination of employment." See N.J.A.C. 17:1-17.14(a)(2)(v).

In addition, to date, Mayer has not accepted the offer of employment as she has not taken the judicial oath of office. Nevertheless, the Board contends the post-retirement agreement reached in January 2022 renders Mayer's severance of employment non-bona fide under N.J.A.C. 17:1-17.14(a)(2)(ii). This sub-section provides that "[e]mployment or reemployment in a position that is not covered by [PERS]" within 180 days of termination of employment "does not constitute a complete termination of the employee's relationship with the employer[.]" N.J.A.C. 17:1-17.14(a)(2)(ii). The Board asserts that because Mayer had "a fully[] developed agreement with the State allowing her to return at any time from January 10 forward," she "continued the employer-employee relationship," and, thus, did not have a bona fide severance of service.

The Board did not specifically present this interpretation of the regulation in its final administrative decision. However, like our discussion above, the Board has added language to the plain words of the regulation to reach an unreasonable interpretation. The Board posits an interpretation that

A-2902-22

the regulation prohibits PERS pension distributions, not only to an employee who was "[e]mploy[ed] or reemploy[ed] in a position that is not covered by [PERS]" within 180 days of their retirement, but also to one who reached a "fully[] developed agreement" with their employer during the 180 days following their retirement, even if they did not accept the position or begin employment.

Again, the phrase "[e]mployment or reemployment" is not ambiguous, and the Board's interpretation of that phrase is not owed deference. The meaning of this phrase is clear and unequivocal on its face. A person must be employed—working at a paying job. "Employment" is "[t]he quality, state, or condition of being employed; the condition of having a paying job." Black's Law Dictionary 663 (12th ed. 2024).

Mayer has not been employed by the State since her retirement almost three years ago. In addition, the Board has not demonstrated an expansive interpretation of "[e]mployment or reemployment" is necessary to safeguard the qualified status of PERS.

In short, the unique process required to attain a Superior Court judgeship prevents a person from making an "arrangement" for the position. They must run the uncertain and unforeseeable gauntlet of politics and unknown roadblocks that may or may not finally result in a gubernatorial nomination

18

and subsequent Senate confirmation. The individual has no control over the ultimate decision—that is left to the political entities and ultimately the full Senate.

The Board unreasonably misinterpreted its own regulations by inserting new language into a clearly written provision. Mayer did not arrange for re-employment with the State prior to her retirement date. She did not begin employment with the State even after securing a new position. Therefore, she has not violated N.J.A.C. 17:1-17.14(a)(2). Mayer is entitled to accept the judgeship by taking the judicial oath of office without foregoing her PERS pension and benefits.

The Board acted arbitrarily, capriciously and unreasonably under the presented circumstances.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-2902-22